## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

97 DEC -4  PM 3: 47

CLERK-ALBUQUERQUE

JENNIFER ROTH,

    Plaintiff,

vs.

                                    CIV. No.

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT and SHERIFF JOE
BOWDICH and UNDERSHERIFF
KENNETH McWETHY in their individual
capacities,

    Defendants.

CIV  97  1545 JC

WILLIAM W. DEATON

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

Plaintiff brings this complaint for damages under Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. §§ 2000e(k), 2000e-3, and 2000e-16, and under 42

U.S.C. § 1983 and the First Amendment to the United States Constitution, and states

the following:

### JURISDICTION AND VENUE

1.      Jurisdiction is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-16, and on 42 U.S.C. §§ 1983 and 1988.

2.      On February 19, 1997, Plaintiff filed a complaint of pregnancy

discrimination against Defendant Bernalillo County Sheriff's Department ("BCSD")

with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff received

Notice of Right to Sue from the EEOC on October 23, 1997. Thus, Plaintiff has timely satisfied the statutory prerequisites to filing this lawsuit.

3.      Venue is proper in this district because all of the acts complained of occurred in New Mexico, and all of the relevant evidence and witnesses are located in New Mexico.

## PARTIES

4.      Plaintiff is a resident and citizen of the state of New Mexico.

5.      Defendant BCSD is a governmental entity operated by the County of Bernalillo.

6.      At all relevant times, Defendant Joe Bowdich was the Sheriff of Bernalillo County and acted under color of state law.

7.      At all relevant times, Defendant Kenneth McWethy was the Undersheriff of Bernalillo County and acted under color of state law.

8.      Defendants Bowdich and McWethy are sued in their individual capacities.

## FACTUAL BACKGROUND

9.      Plaintiff has been employed by Defendant BCSD since July 1983. Plaintiff became a detective in late 1994.

10.     Plaintiff learned that she was pregnant on September 9, 1996. At the time, Plaintiff was a white collar crimes detective, and rarely had any contact with suspects.

She had never been required to discharge her firearm in the course of her duties as a white collar crimes detective.

11.     On September 16 and 17, 1996, Plaintiff informed Sergeant Darci Ryan, Lieutenant Dennis Nasci, and Rangemaster Brian Murphy, that she would be unable to complete the next two to three "quarterly shoots" because of her pregnancy.  Plaintiff had already completed all of the shoots required by state law until the end of 1997, and at this time no one informed Plaintiff that it would be a problem for her to miss the quarterly shoots.

12.     Other BCSD officers were permitted to miss quarterly shoots because of temporary disability and were not subject to adverse employment actions as a result.

13.     On January 29, 1997, Captain Larry Stebleton, Lieutenant Nasci, and Sergeant Mike Spaulding called Plaintiff to a meeting to discuss her pregnancy.  These individuals instructed Plaintiff to get her physician to put her on "light duty" for the duration of her pregnancy.  "Light duty" generally meant that an officer would no longer perform her regular duties but would instead perform clerical work.

14.     Captain Stebleton, Lieutenant Nasci, and Sergeant Spaulding told Plaintiff to surrender her unmarked county-owned vehicle ("COV").  They also chastised Plaintiff for missing a quarterly shoot.

15.     At the January 29, 1997 meeting, Plaintiff responded that she was unable to have her physician put her on light duty because (i) to be eligible for light duty, an

officer must produce a written release from her physician stating that she is unable to perform her regular duties due to illness or injury, and (ii) Plaintiff was able to perform all of her regular duties.  Plaintiff also explained at this meeting that she would be unable to complete the quarterly shoots but that she had completed all of the shoots required by state law.

16.    On January 31 and February 2, 1997, Plaintiff's physician confirmed that Plaintiff was able to perform all of her regular duties, including shooting during emergencies.  Thus, Plaintiff was not eligible to take light duty at this time.

17.    Plaintiff surrendered her COV on February 14, 1997.  Plaintiff was thereafter required to use her personal vehicle, or arrange for a ride with another BCSD officer, to fulfill her job duties.

18.    During the week of February 10, 1997, Plaintiff informed Sheriff Joe Bowdich that she could not take light duty because she was able to perform all of her regular duties.  She again explained that she would be unable to complete the quarterly shoots but that she had completed all of the shoots required by state law.  Plaintiff clarified that she was unable to complete the quarterly shoots because exposure to lead during the shoots could harm her fetus.

19.    Defendant McWethy then informed Plaintiff that she had four days to take light duty, complete the quarterly shoots, or be placed on leave without pay.

4

20.   On February 19, 1997, Plaintiff filed a complaint of pregnancy discrimination with the EEOC.

21.   On February 26, 1997, Defendant McWethy instructed Plaintiff to have anyone at her physician's office write a release placing her on light duty, to write a memorandum to him requesting light duty, and to backdate the memorandum to February 14, 1997. Plaintiff responded that she was unable to do so, and that such a procedure would be illegal.

22.   On March 5, 1997, Defendant Bowdich placed Plaintiff on leave without pay.

23.   On March 8, 1997, financial duress forced Plaintiff to seek governmental financial assistance.

24.   By April 30, 1997, Plaintiff's advanced stage of pregnancy, and complications regarding the pregnancy, finally allowed Plaintiff to take light duty. Thus, Defendant McWethy reinstated Plaintiff from leave without pay and placed Plaintiff on light duty on May 1, 1997.

25.   Plaintiff took maternity leave from May 2, 1997 to August 4, 1997, and then returned to active duty as a BCSD detective.

5

## COUNT I:  TITLE VII PREGNANCY DISCRIMINATION CLAIM
## AGAINST DEFENDANT BCSD

26.    Plaintiff incorporates paragraphs 1 through 25 as though fully set forth herein.

27.    Defendant BCSD subjected Plaintiff to adverse employment actions because of her pregnancy in violation of Title VII and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).  These adverse employment actions include forbidding her to use a COV, and requiring her to (i) take light duty, (ii) complete quarterly shoots, or (iii) be placed on leave without pay.  All of these alternatives were either impossible or adverse, or both, to Plaintiff.

28.    When Plaintiff indicated that she could not take light duty or complete the quarterly shoots, Defendant BCSD placed her on leave without pay.  Plaintiff was thus deprived of her employment income, benefits, and responsibilities from March 5, 1997 until May 1, 1997, when she was finally able to comply with her supervisors' demand to take light duty.  From March 5, 1997 to May 1, 1997, Plaintiff was forced to seek and survive on welfare.

29.    Defendant BCSD had no legitimate, nondiscriminatory, non-pretextual reason for subjecting Plaintiff to these adverse employment actions.

30.    Defendant BCSD's conduct in violation of Title VII caused Plaintiff damages, including but not limited to loss of income and benefits and severe psychological and emotional distress.

6

WHEREFORE, Plaintiff seeks compensatory damages against Defendant BCSD for pregnancy discrimination in violation of Title VII.

## COUNT II:   TITLE VII RETALIATION CLAIM
## AGAINST DEFENDANT BCSD

31.    Plaintiff incorporates paragraphs 1 through 30 as though fully set forth herein.

32.    Plaintiff engaged in protected conduct under Title VII, including but not limited to complaining of pregnancy discrimination and filing a charge of discrimination with the EEOC.

33.    Defendant BCSD subjected Plaintiff to adverse employment actions, including placing Plaintiff on leave without pay, as a direct result of her protected conduct.

34.    Defendant BCSD had no legitimate, nonretaliatory, non-pretextual reason for subjecting Plaintiff to adverse employment action.

35.    Defendant BCSD's conduct in violation of Title VII caused Plaintiff damages, including but not limited to loss of income and benefits and severe psychological and emotional distress.

WHEREFORE, Plaintiff seeks compensatory damages against Defendant BCSD for retaliation in violation of Title VII.

## COUNT III:   FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANTS BOWDICH AND McWETHY

36.     Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

37.     Plaintiff engaged in speech on a matter of public concern by objecting to Defendant McWethy's instruction to falsify a public record and by informing him that his instruction was illegal.  Defendants Bowdich and McWethy, as law enforcement officers, had no legitimate interest in suppressing this speech.  Thus, Plaintiff's speech was protected under the First Amendment to the United States Constitution.

38.     Plaintiff's protected speech was a motivating factor in Defendants Bowdich's and McWethy's detrimental employment decisions against Plaintiff, including their placement of Plaintiff on leave without pay.

39.     Defendants Bowdich and McWethy acted maliciously in subjecting Plaintiff to detrimental employment decisions because of her protected speech.

40.     Defendants Bowdich's and McWethy's conduct in violation of the First Amendment caused Plaintiff damages, including but not limited to loss of income and benefits and severe psychological and emotional distress.

8

WHEREFORE, Plaintiff seeks compensatory and punitive damages against Defendants Bowdich and McWethy for retaliation in violation of the First Amendment.

### JURY DEMAND

41.    Plaintiff hereby demands a jury trial on all counts so triable.

Respectfully submitted,

MARY Y.C. HAN
PAUL J. KENNEDY
Attorneys for Plaintiff
1122 Central Avenue SW
Albuquerque, New Mexico 87102
(505) 842-5460

9