IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER ROTH,

    Plaintiff,

vs.                                                                 Civil No. 97-1545 WWD/LFG

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT, Sheriff JOE BOWDICH,
and Undersheriff KENNETH MCWETHY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment on her pregnancy discrimination claims, filed September 1, 1998 [59-1].[1] Plaintiff, a detective with the Bernalillo County Sheriff's Department, claims that Defendants ("BCSD") subjected her to adverse employment discrimination because of her pregnancy.

### Background

    This case involves an alleged unequal application of department policy and procedure based on Plaintiff's status as a pregnant female. BCSD's Standard Operation Procedures ("SOP") and the Collective Bargaining Agreement between the County and BCSD require that all sworn deputies qualify at quarterly intervals at the firing range with their service handguns. Qualification is mandatory, with exceptions for "sickness or other Department approved circumstances." Pltff's Ex. I. A deputy who does not complete the quarterly shoots for a year must either go on light duty status, leave without pay, or use leave time until he or she qualifies at the range, Nasci

---

[1] Plaintiff also alleges a violation of her First Amendment rights, although the present motion concerns only Plaintiff's pregnancy discrimination claims.

Dep. at 13 (Deft's Ex. 4), although the stringency of these options is challenged by the Plaintiff. The deputy has a grace period of 45 days from the end of the missed quarter to complete the shoot. Ex. I; Roth Dep. Ex. P. According to the department's SOP, light duty is "permitted for BCSD personnel who are unable to perform their regular duties due to illness or injury. . .". Pltff's Ex. J. A doctor's written recommendation is needed to authorize placement on light duty.

When Plaintiff discovered she was pregnant in September 1996, she notified the range master that she did not intend to qualify for the next three shoots. Pltff's Ex. F (Roth Dep., Ex. H). She was concerned about the possible effect of blood lead levels from a live firing range on her unborn fetus. Roth Dep. at 159; Ex. G (Kailey Dep). There is disagreement about whom Roth notified in her chain of command about her decision concerning quarterly shoots and light duty, and specifically whether she notified Darci Ryan, who was Plaintiff's immediate supervisor at one point in her pregnancy. Roth Dep. at 111-12 (Pltff's Ex. F); Roth Dep.at 154 (Pltff's Reply Ex. A) ; Ryan Dep. at 6-7 (Pltff's Ex. N).

When Roth had failed to qualify at the firearms range for the last quarter of 1996, the range master notified Roth's Division Commander, Capt. Larry Stebleton  At a meeting at the end of January 1997 with her immediate supervisor and lieutenant, Roth was given the alternative of qualifying at the range or requesting light duty.  Plaintiff declined to go on light duty, claiming she could still perform her regular job duties, and had a written note from her physician, Dr. Ready, to that effect. Defts' Ex. 5. In mid-February, Defendant Undersheriff McWethy again reminded Plaintiff about the shooting requirements and said that she had the choice of either making up the missed shoot within the 45-day grace period from the end of the missed quarter (January 1, 1997), go on light duty within four days, or be placed on leave without pay. Roth

2

Dep. at 196-98 (Defts' Ex. F).  Around this time, Roth was asked to surrender her County-owned take-home vehicle.[2]  There is some evidence that at this point, Roth decided to request light duty assignment in mid-February 1997, but never produced the required physician's note indicating that she was eligible for light duty status.  After the 45-day grace period expired, Roth had not qualified for the missed shoot nor obtained a physician's note for light duty assignment.

Plaintiff filed a claim of pregnancy discrimination with the EEOC on February 19, 1997.  On March 4, 1997, in a written memorandum to Defendant Sheriff Bowdich, Roth expressed her concerns about the treatment she felt she was receiving because of her pregnancy.  According to a letter dated March 5, 1997 written on behalf of the Deputies' Union, McWethy was unsuccessful in obtaining a temporary waiver of the firearm qualifications for Plaintiff.  Defts' Ex. 7.  That same day, Plaintiff received a letter advising her that she was in breach of the Collective Bargaining Agreement and was being placed on leave-without-pay status.  The letter also outlined the procedure to cure the breach.  Defts' Ex. 8.

On April 30, Roth submitted a formal request for light duty, along with a physician's note.  Defendant McWethy placed Plaintiff on light duty on May 1, 1997.  Since then, Plaintiff was placed on maternity leave after giving birth, and she returned to work in August 1997.

## Discussion

Defendants contend that their actions towards Plaintiff were reasonable as well as legitimate and nondiscriminatory because Plaintiff, like all other deputies, was expected to complete the quarterly shoots if she intended to continue on full duty.  They maintain that a

---

[2] Deputies on light duty do not get to keep the county car while on light duty assignment. McWethy Dep. at 20-21 (Pltff's Ex. L); Pltff's Facts, ¶ 9.

deputy on full duty is expected to perform all the functions of a law enforcement officer, including use of a firearm, for which they have met the mandatory qualification procedure. Nasci Dep. at 37, Defts' Ex. 4. Plaintiff's position is that Defendants treated her differently and with discriminatory intent because other non-pregnant deputies were able to miss quarterly shoots without having to go on light duty.

*Legal Standards*

The Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions. See EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 947 (10th Cir. 1992); Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983). The Act requires courts to inquire whether the employer treats pregnancy or pregnancy-related conditions differently than other medical conditions. The plaintiff asserting claims under the PDA has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.[3] If she succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for their actions. McDonnell Douglas, 411 U.S. 792, 802 (1973); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir. 1992). Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the

---

[3] The PDA "emanates from Title VII, which, among other things, makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex." See 42 U.S.C. § 2000e-2(a)(1); Ackerman, 956 F.2d at 947. The provision was added to the definitional section of Title VII in 1978, and addresses discrimination on the basis of pregnancy, childbirth, or related medical conditions. Claims under the PDA are analyzed under the disparate treatment analysis applied in Title VII cases, including use of the McDonnell Douglas shifting burden inquiry. Ackerman, 956 F.2d at 947 & n.2; Brinkman v. State of Kansas Dept. of Corrections, 863 F.Supp. 1479, 1485 (D.Kan. 1993).

4

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  Id. at 804.

In order to prevail on her summary judgment motion, Plaintiff must show that there is no genuine issue as to any material fact and that she as the moving party is entitled to judgment as a matter of law, based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) Gaylor v. Does, et al., 105 F.3d 572, 574 (10th Cir. Col. 1997).

*Prima Facie Case*

To establish a *prima facie* case of discrimination, a plaintiff must show that (1) she was a member of a protected class; (2) she was doing satisfactory work; (3) she was subjected to a material adverse employment action; and (4) she was treated more harshly than similarly situated employees outside the protected class.  Randle v. City of Aurora, 69 F.3d 441, 451 n.13 (10th Cir. 1995).   The fourth element may be fashioned to inquire whether "a comparable non-protected person was treated better." Ensley-Gaines v. Runyon, 100 F.3d 1220, 1224 (6th Cir. 1996) (relying on the McDonnell-Douglas factors) (citation omitted); see also Giesting v. Storz Instrument Co., 1997 WL 94246, *4 (D.Kan. 1997) (citing Dodd v. Riverside Health System, Inc., No. 95-3074, 1996 WL 29246, at *2 (10th Cir. Jan.25, 1996)).[4]  For the particular circumstances of this case, the clear language of the PDA requires the court to compare treatment

---

[4] The prima facie case is a flexible standard that may be modified to relate to different factual situations.  See Randle, 69 F.3d at 451; Tx. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 254, 256 (1981) (McDonnell framework not inflexible, as the prima facie proof required from plaintiffs varies in different factual situations).  For example, in the present case, Plaintiff did *not* seek light duty, whereas in Adams v. Nolan, the fact that plaintiff there had applied for but did not receive light duty assignment, required a different modification of the prima facie case.  962 F.2d 791, 794 (8th Cir. 1992).

between pregnant persons and "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).  Ackerman, 956 F.2d at 948 (comparison under the Act should be between pregnant and nonpregnant workers, not between men and women).  Thus, Roth's treatment must be compared to the treatment of other, non-pregnant deputies who did not qualify at the range.

Defendants contend that although Plaintiff can satisfy the first element of a prima facie case, she cannot satisfy the other three.  A plaintiff's burden of establishing a prima facie case of disparate treatment is not an onerous one, and Plaintiff's case here meets the basic elements. Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1466 (10th Cir. 1992).  Defendants argue that Roth's work was *not* satisfactory because missing a required shoot rendered her unqualified for the position of BCSD deputy.  They further argue that allegedly "adverse" actions (requiring her to choose between light duty or qualifying at the range; asking her to surrender her car; and placing her on leave without pay) taken were a result of choices Plaintiff made unilaterally.  Although these reasons may serve Defendants well in presenting legitimate reasons for their conduct, or to overcome Plaintiff's allegations of pretext, they are useless as a challenge to the second and third elements of the prima facie case.  Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992) (holding that an employer's proffered reason for taking an adverse action is not to be considered in assessing the sufficiency of plaintiff's prima facie case).

Plaintiff offers evidence that non-pregnant deputies were treated more favorably than she when they missed a quarterly shoot.   I make no determination here regarding the credibility or admissibility of Laurie Pollo's affidavit, which attests to names of these certain other individuals,

except to find that it creates a dispute of material fact.[5] Plaintiff apparently intends to submit the actual range records at trial. Thus, Plaintiff has shown enough evidence to support the last element of the prima facie case, i.e., that she was treated less favorably than similarly situated non-pregnant deputies. If there are issues of credibility or accuracy which pertain to these documents, they are more appropriately decided at trial. Bisbee v. Bey, 39 F.3d 1096, 1101 (10th Cir. 1994) (questions of credibility should be decided by the jury).

*Discriminatory Intent*

Plaintiff has established a prima facie case, but summary judgment does not necessarily follow. I may grant summary judgment in Roth's favor only if no factual issue remains concerning whether reasons offered by Defendants are simply pretext for intentionally discriminating against her because of her pregnancy. I find that disputes of material fact do exist which require that this case proceed to trial. See Durham v. Xerox Corp., 18 F.3d 836, 839-40 (10th Cir.1994) ("Although a prima facie case combined with disproof of the employer's explanations does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer discrimination, and thus preclude summary judgment for the employer."), cited in Brinkman v. State of Kansas Dept. of Corrections, 863 F.Supp. 1479, 1485 (D.Kan. 1993).

At this point, Plaintiff has not carried the ultimate burden of showing that intentional discrimination occurred. She has not shown that the reasons given by BCSD were nothing more than pretext. Defendants have offered explanations for each of the "adverse" actions which can

---

[5] Defendants ask the Court to strike the affidavit, which they claim is both hearsay and inaccurate. Pltff's Ex. R. Given the limited purpose for which Plaintiff has submitted the affidavit at this time as well as its impact on the prima facie case, I defer a ruling on this issue until such time that its admissibility may become an issue.

reasonably be seen as legitimate and non-discriminatory. There is evidence that when Roth was asked to surrender her County-owned car, Lt. Nasci believed that Plaintiff would be going on light duty. Nasci Dep. at 67 (Deft's Ex. 4). There is evidence that compliance with the procedures and requirements in the SOP and the Collective Bargaining Agreement is expected of all BCSD deputies so that the choice given to Plaintiff between going on light duty, making up the quarterly shoot, or being placed on another kind of leave status (including leave without pay) was one that was evenhandedly applied to pregnant as well as non-pregnant deputies. Packingham Aff.,(Defts' Ex. 11); Stebleton Dep., at 14:22, 16:11 (Defts' Ex. 3); McWethy Dep. at 53: 8-20, (Defts' Ex. 10); Nasci Dep. at 15:9-23, (Defts' Ex. 4).

Plaintiff views her "choice" as an unreal one since she claims that she couldn't obtain a doctor's note allowing her to go on light duty and therefore did not have this option open to her. This quandary, if it actually existed, does not aid Plaintiff in meeting the burden of showing pretext or discriminatory intent on the part of Defendants. Whether Roth was or was not successful at obtaining the type of note she desired from her doctor was out of BCSD's control or knowledge, see McWethy Dep. at 20, Pltff's Ex. L, and cannot plausibly be used as evidence of *Defendants'* discriminatory intent. Moreover, Roth herself acknowledged that if she had represented herself to have met the requirements for light duty, her doctor would have given her a note. Reply, Ex. B.[6]

---

[6] There is some question regarding Plaintiff's input and role in obtaining notes from her physician. For example, Dr. Ready gave her a note in February 1997 *removing* a firearm restriction which he had included in another note written only one month earlier. Defts' Exs. 5, 6. The apparent inconsistency concerning the "choices" Roth had gives rise to a dispute of fact as to how reasonable and legitimate Defendants' actions were in adhering to the department's policies and procedure.

To prevail on summary judgment, Plaintiff must show evidence consisting of undisputed facts which support her position that no reasonable factfinder could find Defendants' conduct to be anything other than "clearly pretextual."  Plaintiff has not met this burden at this stage. Viewing the factual record and reasonable inferences in a light most favorable to the Defendants, <u>Gullickson v. Southwest Airlines Pilots' Assoc.</u>, 87 F.3d 1176, 1183 (10th Cir.1996), I find that the factual issues are sufficiently unresolved so that a reasonable factfinder could view Defendants' actions toward Plaintiff as clearly legitimate and non-discriminatory.  Accordingly, Plaintiff is denied summary judgment.  Now, Therefore,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment on her pregnancy discrimination claims **[59-1]** is hereby denied.

_____
UNITED STATES MAGISTRATE JUDGE

9