# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JENNIFER ROTH,

        Plaintiff,

vs.                                                         Civil No. 97-1545 WWD/LFG

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT, Sheriff JOE BOWDICH,
and Undersheriff KENNETH MCWETHY,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment on all of Plaintiff's claims, filed September 21, 1998 [65]. Plaintiff, a detective with the Bernalillo County Sheriff's Department ("BCSD"), brings claims against Defendants alleging pregnancy discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), retaliation under Title VII and violation of her First Amendment rights. Defendants ("BCSD") seek summary judgment on all three claims.

*Legal Standard*

"Summary judgment is appropriate if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir. 1994)(quoting Fed.R.Civ.P. 56(c)), cert. denied, 115 S.Ct. 934 (1995). In considering Defendants' motion, I must consider all the evidence in the light most

favorable to the nonmoving party. Dreiling v. Peugot Motors of America, Inc., 850 F.2d 1373, 1377 (10th Cir. 1988). Id.

**Discussion**

To avoid unnecessary repetition, I refer parties to my Memorandum Opinion and Order denying Plaintiff's Motion for Summary Judgment, entered October 1, 1998, for a synopsis of the operative facts which comprise the background of this case as well as for certain findings which are based on these facts (Oct. 1st Order).

**Title VII (Pregnancy Discrimination Act)**

The Pregnancy Discrimination Act ("PGA"), added to the definitional section of Title VII in 1978, addresses discrimination on the basis of pregnancy, childbirth, or related medical conditions. See 42 U.S.C. § 2000e(k). I previously found as a matter of law that Plaintiff had established a prima facie case of pregnancy discrimination, but that there were disputed factual issues which are in dispute which precluded summary judgment for the Plaintiff. Oct 1st Order. These same factual issues, which are material to the question of whether Plaintiff was treated less favorably than non-pregnant deputies who did not meet the qualification requirements at the firing range due to her pregnancy, also preclude summary judgment for Defendants on this claim. Accordingly, summary judgment is denied on this basis.

**Retaliation under Title VII**

The general approach to Title VII suits set out in McDonnell Douglas is also applicable to

retaliation claims.[1] McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Sorensen v. City of Aurora, 984 F.2d 349, 353 (10th Cir. 1993). To establish a prima facie case of retaliation, plaintiff must show 1) that she engaged in protected opposition to discrimination based on gender 2) that she suffered adverse action from her employer; and 3) that there was a causal connection between the employer's adverse action and the employee's protected acitivity. Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1381 (10th Cir. 1994).

*Protected Activity*

I find that the evidence supports a prima facie case of retaliation. Defendants concede that filing an EEOC complaint constitutes protected activity. What they cannot sufficiently rebut, however, is that Roth's expressions of concern on February 3, 1997 about her perceived treatment to Defendant McWethy also constitutes protected activity.[2] See Sumner v. United States Postal Service, 899 F.2d 203, 209 (2nd Cir. 1990); Steinle v. Being Co., 1995 WL 285323 at *5 (D.Kan. Mar. 30, 1995), citing Phelps v. Sears Roebuck and Co., 1993 WL 523202 at *4 (10th Cir. Dec. 15, 1993) (an informal complaint to management qualifies as protected activity).

*Adverse Action*

---

[1] 42 U.S.C. § 2000e-3(a) provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." See Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996) (retaliation claim in age discrimination case).

[2] Defendants merely relegate the discussion, without conceding that it occurred, as "irrelevant and self-serving." Resp. at 10. Roth and a female deputy who had successfully sued BCSD for discrimination allegedly met with Defendant McWethy on February 3, 1997, at which time Plaintiff voiced her concerns about Defendants' manner of dealing with her pregnancy. Resp. at 15 ("Add'l Factual Allegations").

3

The test for adverse employment actions is not the process utilized by the employer, but the final result for the employee. Meredith v. Beech Aircraft Corp., 18 F.3d 890 (10th Cir. 1994) (cited in Cole, 43 F.3d at 133). Thus, notwithstanding that Defendants' actions toward Plaintiff may have been a matter of following ordinary policy and procedure, and may ultimately be found to be legitimate and justified, the consequences of being on leave without pay had negative consequences for Plaintiff. However, I agree with Defendants that in having to surrender her car, Plaintiff does not show any causal connection to either the filing of the EEOC complaint *or* making an informal complaint. Both protected activities occurred after she surrendered her car, and so can not be inferred to have caused Defendants to request the vehicle's surrender. See Pltff's Resp. at 15, ¶ 14, Defts' Mem. at 10, ¶ 21. Thus, as a matter of law, Plaintiff's surrender of her County-owned vehicle has no relevance to her retaliation claim.

*Causal Connection*

I agree with Defendants that the Plaintiff's filing of the EEOC complaint has questionable causal connection to being placed on leave without pay, despite the temporal connection. The time-line for the incidents relevant to the retaliation claim is as follows: Plaintiff's meeting with another female deputy and McWethy allegedly took place on February 3, 1998. On February 11, 1998, Plaintiff was told that she was required to make up the shoot she had missed, go on light duty within four days, or be placed on leave without pay. Resp. at 16, ¶ 17 (citing Roth Dep. at 209: 10-12); Defts' Mem. at 10, ¶ 19. Roth filed the EEOC complaint on February 19, 1997 and was placed on leave without pay on March 5, 1997.[3] I find that the events leading up to her being

---

[3] On March 4, 1998, Roth also sent a memorandum to Defendant Bowdich in which she again expressed concerns about her perceived disparate treatment. Resp. at 17, ¶ 23. I agree with Defendants' view of this letter as "self-serving," considering its "eleventh hour" temporal

4

placed on leave without pay did not flow from her filing the EEOC complaint, but from the consequences of choices she knew about as of February 11th.

In characterizing McWethy's discussion on February 11th as a "threat" rather than an "action," Plaintiff contends that the "action" (placing Roth on leave without pay) occurred after the EEOC claim was filed. However, the evidence just as easily supports a characterization of the meeting as a "warning" or "notice," and inferences gleaned from the evidence lean in Defendants' favor. First, there is evidence that as of February 14th, Defendants thought that Plaintiff had decided to request light duty assignment and was in the process of obtaining a written note from her doctor. Defts' Ex. 9. Second, McWethy tried unsuccessfully to get a temporary waiver of the firearm requirement through the Deputies' Union on March 5, 1997, when he saw that Roth still had not seen a light duty request. Defts' Mem. at 11, ¶ 26.

On the other hand, the temporal proximity between Plaintiff's informal complaint to McWethy on February 3rd and the placing of Plaintiff on leave without pay on March 5, 1997, could support an inference of retaliation. See Candeleria v. EG&G energy Measurement, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994)(retaliatory motive can be inferred from fact that adverse employment action follows charges by employee against her employer in close temporal proximity); Love v. Re/Max of Am., 738 F.2d 383, 386 (10th Cir. 1984). Therefore, I find that Plaintiff has made a prima facie showing of retaliation under Title VII sufficient to withstand Defendants' summary judgment motion.

**First Amendment Claim**

---

proximity to her knowing that she was very close to being placed on leave without pay, which did occur the very next day. Resp. at 17, ¶ 24; Deft's Mem. at 27, ¶ 27. This issue, however, is properly reserved for the jury.

On March 3, 1997, Defendant McWethy allegedly told Plaintiff to write an internal memorandum requesting light duty and backdate it to show that it was written on February 14, 1998. Plaintiff instead sent a memorandum to McWethy's superior, Defendant Bowdich, complaining about McWethy's request. Resp. at 17, ¶¶ 22 & 23; Ex. E. In placing her on leave without pay status, Plaintiff alleges that Defendants retaliated against her in violation of her First Amendment rights which protect an employee's right to speak out freely on matters of public concern. See Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996). Defendants seek summary judgment on Plaintiff's First Amendment claim based on qualified immunity. They contend that First Amendment protection does not extend to internal personnel matters either presently or during the time Plaintiff alleges retaliation.

*Qualified Immunity Standard*

Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred. Clanton v. Cooper, 129 F.3d 1147 (10th Cir.1997) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991) & Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988)). If the defendant's conduct as alleged by the plaintiff does not violate the law, we need not reach the issue of whether the law was clearly established. Clanton at 1153. If, however, we are persuaded that the defendant's conduct violated the law, "the plaintiff must [also] show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." Id.

In a First Amendment context, the inquiry examines whether speech addressed matters of

6

public concern and then if so, whether the protected nature of his speech was sufficiently clear that Defendants should have known that BCSD's interests would not survive a balancing inquiry (parallel to the "clearly established" part of the inquiry). Patrick v. Miller, 953 F.2d 1240, 1246 (10th Cir. 1992). The inquiry then proceeds with a look at whether the evidence raises genuine issue of material fact as to whether the speech was a substantial or motivating factor in Defendants' actions towards Plaintiff. Id. at 1248. In this case, the inquiry goes no further than the first step, the determination of which is a question of law. Gardetto, 100 F.3d at 811; Connick v. Myers, 461 U.S. 138, 148 n.7, (1983). I find that First Amendment protection does not extend to Roth's complaints to Defendant Bowdich regarding a request to backdate a internal personnel memorandum.[4]

Speech on a matter of public concern is speech which can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Meyers, 461 U.S. 138, 146 (1983). An internal departmental memorandum concerning the effective date for an individual's light duty status cannot be fairly considered to have any political or social concern to the general community. Plaintiff's allusion to malfeasance or wrongdoing on McWethy's part is misplaced where, as here, no public import was compromised by McWethy's suggestion to date a memorandum so that Plaintiff could avoid the consequences of missing a quarterly shoot. See Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988), cited in Patrick v. Miller, 953 F.2d 1240, 1247 (10th Cir. 1992).

---

[4] Even if it did, there is no legal support (nor does Plaintiff offer any) for the proposition that the contours of such a protection were sufficiently clear at the time of the incidents in question, so that a reasonable officer would understand that what he was doing violated that right. Foote v. Spiegel et al., 118 F.3d 1416, 1424 (10th Cir. 1997).

7

The context within which McWethy's request was made is also indicative of its purely personal nature. See Connick v. Meyers, 461 U.S.at 147-48, cited in Patrick v. Miller, 953 F.2d 1240, 1246 (10th Cir. 1992)(public concern inquiry requires a consideration of "the content, form, and context of a given statement, as revealed by the whole record"). The suggested backdate was the date Plaintiff was given in her February 11th meeting with McWethy as the last date she had to request light duty before she would be placed on leave without pay, unless she made up the missed quarterly shoot. Defts' Mem. at 10, ¶ 19. It is a noble but implausible stretch to attribute some broad public purpose to Plaintiff's memorandum to Bowdich when the circumstances belie its purpose as a way of showing dissatisfaction with being asked to go on light duty. See Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994) (subjective motive of the speaker is an important factor in determining whether the speech was calculated to redress personal grievances or to address a broader public purpose).

Because the speech relied on by Plaintiff is not protected under the First Amendment, I find that Plaintiff has not alleged a deprivation of a constitutional right at all and thus, I need not determine whether Defendants are entitled to qualified immunity. County of Sacramento et al v. Lewis et al., 118 S.Ct. 1708, 1714, ___ U.S. ___ , ___ (1998) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991) Now, Therefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on all of Plaintiff's claims **[65]** is granted in part;

**IT IS FURTHER ORDERED** that Defendants are **denied** summary judgment on Plaintiff's pregnancy discrimination claims; **denied** summary judgment on Plaintiff's retaliation claims under Title VII claims; and **granted** summary judgment on Plaintiff's claims of retaliation

under the First Amendment.

_____
UNITED STATES MAGISTRATE JUDGE