# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JENNIFER ROTH,

    Plaintiff,

vs.                                                   Civil No. 97-1545 WWD/LFG

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT, Sheriff JOE BOWDICH,
and Undersheriff KENNETH MCWETHY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment on all of Plaintiff's claims, filed September 21, 1998 [65]. Plaintiff, a detective with the Bernalillo County Sheriff's Department ("BCSD"), brings claims against Defendants alleging pregnancy discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), retaliation under Title VII and violation of her First Amendment rights. Defendants ("BCSD") seek summary judgment on all three claims.

*Legal Standard*

"Summary judgment is appropriate if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir. 1994)(quoting Fed.R.Civ.P. 56(c)), cert. denied, 115 S.Ct. 934 (1995). In considering Defendants' motion, I must consider all the evidence in the light most favorable to the nonmoving party. Dreiling v. Peugot Motors of America, Inc., 850 F.2d 1373, 1377 (10th Cir. 1988). Id.

**Discussion**

To avoid unnecessary repetition, I refer parties to my Memorandum Opinion and Order denying Plaintiff's Motion for Summary Judgment, entered October 1, 1998, for a synopsis of the operative facts which comprise the background of this case as well as for certain findings which are based on these facts (Oct. 1st Order).

**Title VII (Pregnancy Discrimination Act)**

The Pregnancy Discrimination Act ("PGA"), added to the definitional section of Title VII in 1978, addresses discrimination on the basis of pregnancy, childbirth, or related medical conditions. See 42 U.S.C. § 2000e(k). I previously found as a matter of law that Plaintiff had established a prima facie case of pregnancy discrimination, but that there were disputed factual issues which are in dispute which precluded summary judgment for the Plaintiff. Oct 1st Order. These same factual issues, which are material to the question of whether Plaintiff was treated less favorably than non-pregnant deputies who did not meet the qualification requirements at the firing range due to her pregnancy, also preclude summary judgment for Defendants on this claim. Accordingly, summary judgment is denied on this basis.

**Retaliation under Title VII**

The general approach to Title VII suits set out in McDonnell Douglas is also applicable to retaliation claims.[1] McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

[1] 42 U.S.C. § 2000e-3(a) provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." See Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996)

(1973); Sorensen v. City of Aurora, 984 F.2d 349, 353 (10th Cir. 1993). To establish a prima facie case of retaliation, plaintiff must show 1) that she engaged in protected opposition to discrimination based on gender 2) that she suffered adverse action from her employer; and 3) that there was a causal connection between the employer's adverse action and the employee's protected activity. Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1381 (10th Cir. 1994).

*Protected Activity and Adverse Action*

I find that the evidence supports a prima facie case of retaliation. Defendants concede that filing an EEOC complaint constitutes protected activity. What they cannot sufficiently rebut, however, is that Roth's expressions of concern on February 3, 1997 about her perceived treatment to Defendant McWethy also constitutes protected activity.[2] See Sumner v. United States Postal Service, 899 F.2d 203, 209 (2nd Cir. 1990); Steinle v. Being Co., 1995 WL 285323 at *5 (D.Kan. Mar. 30, 1995), citing Phelps v. Sears Roebuck and Co., 1993 WL 523202 at *4 (10th Cir. Dec. 15, 1993) (an informal complaint to management qualifies as protected activity).

The test for what constitutes adverse employment actions is not the process utilized by the employer, but the final result for the employee. Meredith v. Beech Aircraft Corp., 18 F.3d 890 (10th Cir. 1994) (cited in Cole, 43 F.3d at 133). Defendants' actions toward Plaintiff may have been a matter of following ordinary policy and procedure, and may ultimately be found to be

---

(retaliation claim in age discrimination case).

[2] Defendants merely relegate the discussion, without conceding that it occurred, as "irrelevant and self-serving." Resp. at 10. Roth and a female deputy who had successfully sued BCSD for discrimination allegedly met with Defendant McWethy on February 3, 1997, at which time Plaintiff voiced her concerns about Defendants' manner of dealing with her pregnancy. Resp. at 15 ("Add'l Factual Allegations").

3

legitimate and justified. However, because the consequences of being on leave without pay and not having use of her county-owned vehicle can be viewed as having negative consequences for Plaintiff, this part of the prima facie case is satisfied.

*Causal Connection*

Plaintiff has presented sufficient evidence for a prima facie case to establish a causal connection between her informal and formal complaints and the adverse actions that were taken. For example, Plaintiff voiced concern about perceived discriminatory treatment to Defendant McWethy on February 3, 1997, shortly before Plaintiff's car was surrendered and before she was placed on leave without pay.[3] See Candeleria v. EG&G Energy Measurement, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994)(retaliatory motive can be inferred from fact that adverse employment action follows charges by employee against her employer in close temporal proximity).

The fact that Plaintiff knew about possible employment consequences prior to making a formal complaint is not dispositive at this stage. On February 11, 1998, Plaintiff was told that she was required to make up the shoot she had missed, go on light duty within four days, or be placed on leave without pay. Pltff's Add'l Factual Alleg., ¶ 17; Defts' Statemt. of Undisp. Facts, ¶ 19. Plaintiff characterizes Defendant's notice to her of these consequences as "threats" which were not actually carried out until after she had filed her formal complaint with EEOC on February 19, 1997. Defendant, on the other hand, has presented evidence showing that in that space of time between the warnings and when action was finally taken, it was thought that Plaintiff was taking

---

[3] See Pltff's Add'l Factual Allegations, ¶ 16. Roth surrendered her car on or about February 14, 1997. Pltff's Add'l Factual Alleg., ¶ 14; Deft's Statemt. of Undisp. Facts, ¶ 21. She was placed on leave without pay on March 5, 1997. Pltff's Add'l Factual Alleg., ¶ 24.

4

steps to go on light duty.  Defts' Ex. 9.  At the same time, Defendant McWethy was allegedly trying, unsuccessfully, to get a temporary waiver of the firearm requirement through the Deputies' Union when he saw that Roth still had not turned in a light duty request.  Defts' Statemt. of Undisp. Facts, ¶ 26.

These factual issues are to be put in perspective and resolved by the fact-finder at trial.  At this point, I find that Plaintiff has made a prima facie showing of retaliation under Title VII sufficient to withstand Defendants' summary judgment motion.

**First Amendment Claim**

On March 3, 1997, Defendant McWethy allegedly told Plaintiff to write an internal memorandum requesting light duty and backdate it to show that it was written on February 14, 1998.  Plaintiff instead sent a memorandum to McWethy's superior, Defendant Bowdich, complaining about McWethy's request.  Resp. at 17, ¶¶ 22 & 23; Ex. E.  In placing her on leave without pay status, Plaintiff alleges that Defendants retaliated against her in violation of her First Amendment rights which protect an employee's right to speak out freely on matters of public concern.  See Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996).  Defendants seek summary judgment on Plaintiff's First Amendment claim based on qualified immunity.  They contend that First Amendment protection does not extend to internal personnel matters either presently or during the time Plaintiff alleges retaliation.

*Qualified Immunity Standard*

Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation

5

occurred.  Clanton v. Cooper, 129 F.3d 1147 (10th Cir.1997) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991) & Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988)).  If the defendant's conduct as alleged by the plaintiff does not violate the law, we need not reach the issue of whether the law was clearly established.  Clanton at 1153.  If, however, we are persuaded that the defendant's conduct violated the law, "the plaintiff must [also] show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." Id.

In a First Amendment context, the inquiry examines whether speech addressed matters of public concern and then if so, whether the protected nature of his speech was sufficiently clear that Defendants should have known that BCSD's interests would not survive a balancing inquiry (parallel to the "clearly established" part of the inquiry).  Patrick v. Miller, 953 F.2d 1240, 1246 (10th Cir. 1992).  The inquiry then proceeds with a look at whether the evidence raises genuine issue of material fact as to whether the speech was a substantial or motivating factor in Defendants' actions towards Plaintiff.  Id. at 1248.  In this case, the inquiry goes no further than the first step, the determination of which is a question of law.  Gardetto, 100 F.3d at 811; Connick v. Myers, 461 U.S. 138, 148 n.7, (1983).  I find that First Amendment protection does not extend to Roth's complaints to Defendant Bowdich regarding a request to backdate a internal personnel memorandum.[4]

Speech on a matter of public concern is speech which can "be fairly considered as relating

---

[4] Even if it did, there is no legal support (nor does Plaintiff offer any) for the proposition that the contours of such a protection were sufficiently clear at the time of the incidents in question, so that a reasonable officer would understand that what he was doing violated that right. Foote v. Spiegel et al., 118 F.3d 1416, 1424 (10th Cir. 1997).

6

to any matter of political, social, or other concern to the community." Connick v. Meyers, 461 U.S. 138, 146 (1983). An internal departmental memorandum concerning the effective date for an individual's light duty status cannot be fairly considered to have any political or social concern to the general community. Plaintiff's allusion to malfeasance or wrongdoing on McWethy's part is misplaced where, as here, no public import was compromised by McWethy's suggestion to date a memorandum so that Plaintiff could avoid the consequences of missing a quarterly shoot. See Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988), cited in Patrick v. Miller, 953 F.2d 1240, 1247 (10th Cir. 1992).

The context within which McWethy's request was made is also indicative of its purely personal nature. See Connick v. Meyers, 461 U.S.at 147-48, cited in Patrick v. Miller, 953 F.2d 1240, 1246 (10th Cir. 1992)(public concern inquiry requires a consideration of "the content, form, and context of a given statement, as revealed by the whole record"). The suggested backdate was the date Plaintiff was given in her February 11th meeting with McWethy as the last date she had to request light duty before she would be placed on leave without pay, unless she made up the missed quarterly shoot. Defts' Mem. at 10, ¶ 19. It is a noble but implausible stretch to attribute some broad public purpose to Plaintiff's memorandum to Bowdich when the circumstances belie its purpose as a way of showing dissatisfaction with being asked to go on light duty. See Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994) (subjective motive of the speaker is an important factor in determining whether the speech was calculated to redress personal grievances or to address a broader public purpose).

Because the speech relied on by Plaintiff is not protected under the First Amendment, I find that Plaintiff has not alleged a deprivation of a constitutional right at all and thus, I need not

7

determine whether Defendants are entitled to qualified immunity. County of Sacramento et al v. Lewis et al., 118 S.Ct. 1708, 1714, ___ U.S. ___, ___ (1998) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991) Now, Therefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on all of Plaintiff's claims **[65]** is granted in part;

**IT IS FURTHER ORDERED** that Defendants are **denied** summary judgment on Plaintiff's pregnancy discrimination claims; **denied** summary judgment on Plaintiff's retaliation claims under Title VII claims; and **granted** summary judgment on Plaintiff's claims of retaliation under the First Amendment.

_____
UNITED STATES MAGISTRATE JUDGE